Michael S. EVERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 55190.

Court of Criminal Appeals of Texas, Panel No. 1.

Nov. 15, 1978.

Rehearing En Banc Denied Feb. 7, 1979.

Michael S. Copeland, Law Offices of F. Ward Steinbach, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary W. Love, and Jayne Wilson, Asst. Dist. Attys., Dallas, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

## OPINION

W. C. DAVIS, Judge.

In a bench trial, appellant was convicted of unlawfully carrying a handgun. V.T.C.A. Penal Code, Sec. 46.02. Punishment was assessed at sixty days in jail and a fine of Five Hundred Dollars. Appellant asserts seven grounds of error, including claims of illegal search and seizure. We affirm.

On May 13, 1976, Dallas Police Officers Fambrough and Gary saw appellant operating a car on Harry Hines Boulevard in Dallas, Texas. Observing tape on the windshield covering the safety sticker area, the officers stopped appellant to investigate a "possible violation of the safety sticker." Upon investigation, Officer Fambrough discovered that the tape concealed an expired Louisiana inspection (safety) sticker. Officer Fambrough issued a written citation for "expired inspection sticker" and, upon appellant's written promise to appear, permitted appellant to drive away. Accelerating quickly, appellant's vehicle threw mud and gravel on Officer Fambrough and the police car before getting back onto the roadway and "squealing the tires" on the pavement. Officer Fambrough pursued appellant, stopping him a second time. Following the second stop, Officer Fambrough made a custodial arrest of appellant for "improper start from a parked position." An inventory of appellant's car at the scene produced a handgun from an unlocked briefcase in the front passenger's seat. Appellant's motion to suppress the handgun as evidence was overruled and at trial the handgun was

admitted over objection. Appellant testified and admitted possession of the handgun, but claimed the "traveler" and "business" exemptions. V.T.C.A. Penal Code, Sec. 46.03.

Grounds of error one through four contain appellant's challenge to the inventory of his car.[1] They will be discussed collectively. However, prior to that discussion, we must consider the State's contention that appellant's testimony waived his right to challenge the search under the doctrine of curative admissibility.

■ Generally, the doctrine of curative admissibility prohibits a defendant from urging the admission of improper evidence as a ground for reversal where he gives testimony on direct examination which establishes the same facts as those to which he objects. *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975); *Palmer v. State*, 475 S.W.2d 797 (Tex.Cr.App.1972). Appellant took the stand and on direct examination admitted possession of the handgun, but claimed the statutory exemptions of "traveler" and "business." The State argues that under curative admissibility the appellant's testimony waives any challenge to the legality of the search. We cannot agree.

■ A long standing exception to the general application of the doctrine of curative admissibility permits testimony from the accused which meets, destroys or explains erroneously admitted evidence. Such testimony does not act as a waiver of the right to challenge the legality of the search that produced that evidence. *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973); *Alvarez v. State*, 511 S.W.2d 493 (Tex.Cr. App.1973) (opinion on State's second motion for rehearing). Under this authority, the appellant did not waive his objection to the legality of the search if he testified to meet,

destroy or explain possession of the handgun.

A situation analogous to appellant's position was presented in *Craddock v. State*, 553 S.W.2d 765 (Tex.Cr.App.1977) (opinion on appellant's motion for rehearing). There, the defendant was accused of possession of marihuana. During the trial of the cause, defendant objected to the introduction of the marihuana, claiming it was discovered during an illegal search and seizure. Later, defendant took the stand and on direct examination admitted possession of the marihuana, but claimed the defense of entrapment. The State argued the question of illegal search was waived by the defendant's testimony admitting possession of the marihuana.

In deciding *Craddock*, supra, we first noted that in order to take advantage of the entrapment defense, the defendant was forced to take the stand and testify. Therefore, the admission of possession of marihuana was a necessary predicate to the assertion of the entrapment defense. Blanket application of the doctrine of curative admissibility on facts such as *Craddock* would place a defendant in a dilemma: he could waive the search issue and assert his defense, hoping to win at trial; or sit mute, hoping for a reversal on the search issue. Such a result would be "an impermissible and unconstitutional chill upon Appellant's right to author and draft his own defense." *Craddock*, supra.

■ The appellant was presented with a *Craddock* dilemma. As an essential step in asserting his defenses of "travel" and "business", appellant had to admit possession of the handgun. Therefore, under *Craddock*, supra, appellant's testimony did not act as a waiver of his right to attack the legality of the search.[2]

---

1. In addition to the claimed violation of the fourth amendment to the Federal Constitution, appellant also urges a violation of Article 1, Sec. 9 of the Texas Constitution. These two provisions serve the same purpose: to safeguard the privacy and security of individuals against arbitrary invasion by governmental of-

ficials. *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr. App.1976).

2. Our holding that appellant did not waive his right to challenge the legality of the search is in accord with *Thomas v. State*, 572 S.W.2d 507, (1978) (Opinion on State's Motion for Rehearing), handed down subsequent to the submis-

In the absence of waiver, it is necessary to determine the legality of the search of appellant's car. We now do so.

Appellant contends that both the first and second "arrests" following alleged violations of traffic regulations were illegal, as his conduct was not prohibited by law. Therefore, according to appellant, there was no violation of the law committed in the presence of the officers and, thus, there was no probable cause to arrest. We do not agree.

■ By his argument, appellant admits there were two separate arrests. Therefore, once Officer Fambrough received appellant's written promise to appear during the first arrest, that arrest was complete. Art. 6701d, Sec. 148, V.A.C.S. Had appellant committed no further violation, his second arrest would never have occurred. Our consideration of a valid arrest preceding the inventory of appellant's car is thus limited to an examination of the second and custodial arrest.[3]

■ Appellant's custodial arrest was occasioned by the manner in which he operated his vehicle following his first arrest. After signing and receiving a copy of the citation for the first arrest, appellant accelerated quickly and, in so doing, threw gravel and dirt on Officer Fambrough and the police car. Appellant was stopped a second time and arrested for "improper start from parked position."[4] Officer Fambrough testified that in addition to the improper start appellant was arrested for expired registration plates and the expired safety sticker. The record also reflects that a complaint charging appellant with anti-noise violation by unlawfully "squealing tires" had been filed in municipal court. In light of this evidence, we hold there was sufficient cause to permit the custodial arrest of appellant following the second stop. Art. 6701d, Secs. 150 and 153, V.A.C.S.

Appellant contends that the search of his car was a pretext or subterfuge by the arresting officers to obtain mere evidence of another crime. As such, the search was not an inventory pursuant to the caretaking function of the police. In support of this contention, appellant argues that the inventory procedure of the Dallas Police Department was not followed. Failure to follow procedure is, according to the appellant, fatal to the State's claim that the search was an inventory.

■ Appellant argues that the inventory was incomplete because the car was not placed in the regular police vehicle pound and because no written inventory was prepared. In inventory cases, the physical location of the impounded vehicle is not relevant. *Robertson v. State*, 541 S.E.2d 608 (Tex.Cr.App.1976). Testimony from both officers was to the effect that Dallas Police

---

sion of the present case. In *Thomas, supra,* the defendant admitted possession of narcotics found during a search of his vehicle, but testified he was returning them to a friend. Applying the rationale of a fifth amendment case, *Harrison v. U. S.,* 392 U.S. 219, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968) to the doctrine of curative admissibility, we held that defendant's testimony did not waive his right to challenge the search of his vehicle. Under *Harrison, supra,* the question is not "*whether* the petitioner made a knowing decision to testify, but *why.*" Seeking a motive for defendant's testimony in *Thomas, supra,* we concluded that defendant would not have testified if the illegally obtained evidence (bottle of pills) had not been admitted, because that was the only evidence the State introduced. See also Judge Morrison's concurring opinion in *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr.App. 1973) suggesting that *Harrison, supra,* might alter the doctrine of curative admissibility.

3. Regarding the first arrest for "safety sticker violation," appellant argues he was an out-of-state visitor with out-of-state registration plates and out-of-state safety sticker, thus exempting him from safety sticker requirements under Art. 6701d, Sec. 140(a)(e), (f), V.A.C.S. The officers could properly detain appellant to investigate a possible violation when they observed tape on appellant's windshield. *Milton v. State,* 549 S.W.2d 190 (Tex.Cr.App.1977). *Greer v. State,* 544 S.W.2d 125 (Tex.Cr.App. 1976). Further, the record does not reflect that appellant was a visitor within the meaning of the statute.

4. While we find no statute phrased as "improper start from parked position," there can be no question but that appellant's conduct violated the law. See Art. 6701d, Sec. 51 (reckless driving) and Sec. 185(a) (exhibition of acceleration), V.A.C.S.

Department had a policy requiring inventory of automobiles, once the driver was arrested. Further, both officers testified that the policy was followed in making the inventory of appellant's car. At no point does the record reflect that written inventories were part of this policy, although written forms were available at the police station. Appellant presented evidence and cross-examined both officers, yet the record does not show any deviation from police department policy.[5]

■ Appellant further argues that the search of his auto was without probable cause and not justified under the plain view doctrine or by reason of officer safety. These contentions are correct; however, the existence of probable cause or the presence of one of the warrantless search justifications are not required in inventory situations. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Inventories are routine, administrative caretaking functions, as distinguished from searches pursuant to criminal investigations. *Opperman*, supra.

Appellant argues that the search was a criminal investigation for mere evidence of a crime and not an administrative inventory. The record clearly shows that appellant was under custodial arrest, prior to the search of his vehicle. The officer did not need to search for a reason to arrest appellant because appellant was already arrested. Once the appellant was arrested, the administrative caretaking function arose. The custodial arrest separated appellant from his car. The officers could either impound the car or leave it on the shoulder of a heavily traveled street where it would be subject to damage, vandalism or theft. Pursuant to police department policy, the officers, having observed that appellant's vehicle contained personal property, inventoried the car, then drove it to the vehicle pound. Such a practice has been recognized as a valid caretaking function. *Opperman*, supra. We also decline to adopt appellant's

suggested waiver of property rights in lieu of inventory procedures.

■ We hold that the handgun was discovered during a valid inventory following a custodial arrest. Grounds of error one through four are overruled.

■ In ground of error five, appellant contends that the verdict is contrary to the law and evidence because appellant was a traveler. V.T.C.A. Penal Code, Sec. 46.03. The defense of travel is a question for the trier of fact. *Hill v. State*, 100 Tex.Cr.R. 212, 272 S.W. 450 (1925); *Armstrong v. State*, 98 Tex.Cr.R. 335, 265 S.W. 701 (1924). Clearly, the fact finder is not required to believe the appellant's reason for carrying the pistol. *Porter v. State*, 388 S.W.2d 422 (Tex.Cr.App.1965). Appellant presented his traveler defense and we cannot hold that the guilty verdict was contrary to the law and evidence. The evidence showed that appellant arrived in Dallas on May 12 and secured a room that same day. Appellant's arrest occurred a day later on May 13. In *Ballard v. State*, 74 Tex.Cr.R. 110, 167 S.W. 340 (1914), we held that once a traveler arrives at his destination, secures a room and remains there all night, he ceases to be a traveler. In *Kiles v. State*, 398 S.W.2d 568 (Tex.Cr.App.1966), the defendant was arrested the same day he returned to Texas following an out-of-state journey and we held that defendant's journey had ended and he could no longer claim the traveler's exemption.

■ Appellant attempts to distinguish *Ballard*, supra, based on the purpose for which the appellant was traveling. In *Ballard*, supra, the defendant was on a "man hunt" and carried the pistol after arriving at his destination. The appellant claims he was on legitimate business and further that temporary cessation of a journey for legitimate business does not destroy the status of traveler. Under the travel exemption, the purpose of the travel is not relevant. Also, the evidence showed that appellant had

---

5. The State satisfied its burden concerning inventory through the testimony of the officers that (1) an inventory policy existed and (2) that policy was followed. If appellant wished to appeal the policy or alleged deviation from that policy, then appellant must develop the record.

ceased his journey for a period of four days, a time too great to be considered a temporary cessation.

In ground of error six, appellant complains that the verdict is contrary to the law and evidence because he carried the handgun from his home to his place of business for a legitimate purpose and did not carry such weapon habitually. Appellant argues he had the legitimate purpose of protecting himself and the money he was to receive as manager of a band. There is no recognized exception permitting one to carry a handgun on the basis of self-protection; therefore, if appellant is to be successful, it must be on the legitimate business of protecting a large sum of money or carrying the pistol to his place of business along a practical route, such carrying being not habitual. *Boyett v. State*, 167 Tex.Cr.R. 195, 319 S.W.2d 106 (1958).

At the moment of his arrest, appellant had no large sums of money. Further, the record does not reveal that appellant had any right to control the premises of Dooley's Club in Dallas, the place where appellant's band was engaged for four days. Such control of the business premises is essential in order to justify carrying a pistol to the business premises. V.T.C.A. Penal Code, Sec. 46.03(2). The record also shows that appellant intended to carry the handgun all four days in Dallas and such evidence could be interpreted as habitual carrying of a pistol. *Cortemeglia v. State*, 505 S.W.2d 296 (Tex.Cr.App.1974).

The trier of fact heard both defenses of appellant, and we cannot say that the guilty verdict was contrary to the law and the evidence. See, generally, *Raifsnider v. State*, 67 S.W. 108 (Tex.Cr.App.1902).

Finally, the appellant argues error by the trial court in overruling his motion for a new trial, basing this argument on alleged errors in the previous grounds of error. This ground of error is not in compliance with Art. 40.09, V.A.C.C.P., therefore nothing is presented for review.

The judgment is affirmed.